# EXHIBIT F

Declaration of James Weiland

EXHIBIT F

AARON D. FORD
Attorney General
SAMUEL L. PEZONE, JR. (Bar No. 15978)
Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-4070 (phone)
(702) 486-3768 (fax)
Email: spezone@ag.nv.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VICTOR MONTELONGO,<br><br>Plaintiff,<br><br>v.<br><br>JAMES WEILAND, *et al.*,<br><br>Defendants. | Case No. 3:23-cv-00624-CSD<br><br>**DECLARATION OF JAMES WEILAND** |

I, James Weiland, hereby declare based on personal knowledge and/or information and belief, that the following assertions are true.

1. I am employed by the Nevada Department of Corrections ("NDOC") as a Correctional Sergeant at Ely State Prison (ESP). I am a Defendant in the matter of *Montelongo v. Weiland, et al.*, now proceeding in the United States District Court, District of Nevada, as Case Number 3:23-cv-00624-CSD. I make this declaration in support of Defendants' Motion for Summary Judgment.

2. Part of my job responsibilities include responding to emergency incidents and assisting and supervising responding officers during said incidents. On October 28, 2022, at around 7:52 PM, I was conducting an inspection of Tower 3 when I heard an officer call an emergency in Unit 7 over the institutional radio. I responded to Unit 7 and began assisting officers in escorting offender Victor Montelongo to visiting via restraint chair. I was informed by other responding officers that Montelongo and his cellmate had assaulted Officers Christopher Coulston and Edward Elmore during an escort.

3. Montelongo was placed in a visiting holding cell where he was examined by medical staff. I was present for the entirety of this examination, which was filmed on handheld camera. Montelongo smelled of alcohol and was slurring his words throughout the medical examination. When I asked Montelongo how long he had been drinking, Montelongo reported having consumed alcohol for about a day prior. Following this medical examination, a responding nurse contacted the on-call medical provider, who ordered that Montelongo be sent to the hospital.

4. At approximately 9:52 PM, I began supervising CERT officers as they escorted Montelongo from visiting to the property room hallway for medical transport. During escort, Montelongo repeatedly tried to turn toward and pull away from escorting officers. CERT officers gave several orders for Montelongo to face forward and comply with escort, which Montelongo ignored.

5. Montelongo then attempted to stop the escort entirely, which led CERT officers to place him in a modified rear wrist lock, i.e., escorting officers linked arms with offender Montelongo facing the opposite direction and began walking Montelongo backward toward the property room.

6. I was walking behind the escort at the time, and, as the escort resumed, Montelongo was facing me. Despite the change in escort position, Montelongo still attempted to pull away from and turn toward the escorting officers. During one such attempt, Montelongo lifted his head and spat at me, hitting my glasses.

7. Propelling bodily fluid is a serious criminal offense and a health and safety concern for officers, given the possibility that such may result in the transmission of various communicable diseases. If an offender attempts to propel by spitting on an officer during a standing escort, officers are trained to place the offender in the prone position while segmenting and restraining the various parts of his body so that officers can place a “spit mask,” a mesh draw-string bag, over the offender’s head. This spit mask will prevent the offender from making any further attempts to spit on escorting officers.

8. I watched CERT officers lay Montelongo on the ground in prone position, segment and restrain the various parts of his body, and place a spit mask over his head. Montelongo remained restrained in this position until responding officers could retrieve a handheld camera.

9. The escort resumed thereafter, and, given the likelihood of a subsequent spontaneous use of force, the remainder of the escort was filmed on the handheld camera. Montelongo was placed in a property room holding cell where officers applied waist restraints in lieu of handcuffs. Montelongo was then escorted to the medical transport. Montelongo was driven to the hospital without further incident.

10. I did not converse with Montelongo during the escort from visiting to the property room. I did not at any time inform Montelongo whether he would receive a disciplinary charge for his behavior, nor did I say that Montelongo had "really fucked up" for "touching [my] officers," as alleged. Other than Montelongo's repeated attempts to turn toward and pull away from escorting officers, I made no other note of his behavior during the escort. To the best of my recollection, I did not witness Montelongo attempting to move his hair out of his eyes either with his tongue or by blowing on it. At no time did I order officers to stop the escort, and at no time did I ask Montelongo "what the hell [he] was doing."

11. I did not issue any orders to CERT officers to lay Montelongo prone, to segment and restrain him on the ground, or to place a spit mask over Montelongo's head, though such was consistent with officer training. I also did not assist CERT officers in any of these actions, and I certainly did not "pin" Montelongo to the ground.

12. I observed CERT officers while they laid Montelongo prone and for the entire time Montelongo was restrained on the ground. Neither I nor CERT officers punched or kicked Montelongo. I did not witness any officer stomp on Montelongo's head.

13. I was merely present to supervise the escorting officers. I did not witness the officers performing any acts which would have been inconsistent with their training or the

safety and security of fellow officers and offender Montelongo. Thus, I did not see any need to intervene.

14. Officers Coulston and Elmore were not present and had no part in escorting Montelongo from visiting to the property room. To the best of my recollection, both officers had already been sent to the hospital for their injuries by that time.

I declare under penalty of perjury pursuant to 28 U.S.C. section 1746 that the foregoing is true and correct.

EXECUTED this 9th day of January, 2026.

/s/ *James Weiland*
James Weiland