AARON D. FORD
Attorney General
SAMUEL L. PEZONE, JR. (Bar No. 15978)
Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-4070 (phone)
(702) 486-3768 (fax)
Email: spezone@ag.nv.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VICTOR MONTELONGO,<br><br>Plaintiff,<br><br>v.<br><br>JAMES WEILAND, *et al.*,<br><br>Defendants. | Case No. 3:23-cv-00624-CSD<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]** |

Defendants, Christopher Coulston (Coulston), Edward Elmore (Elmore), William Gittere (Gittere), Curtis Rigney (Lt. Rigney), and James Weiland (Weiland) (collectively "Defendants"), hereby submit this reply in support of their move for summary judgment pursuant to Fed. R. Civ. P. 56 (ECF No. 61).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PROCEDURAL HISTORY AND MONTELONGO'S ALLEGATIONS

This action is brought by Plaintiff Victor Montelongo (Montelongo), an offender in the custody of the Nevada Department of Corrections (NDOC), pro se, pursuant to 42 U.S.C. § 1983. ECF No. 1-1. Montelongo filed his Complaint on December 7, 2023. *Id*. On June 7, 2024, this Court entered a Screening Order regarding the Complaint. ECF No. 6. Therein, this Court summarized the Plaintiff's pertinent allegations as follows:

> In late 2022 at ESP, Plaintiff was escorted out of his unit by a correctional emergency response team ("CERT") in response to an alleged assault on prison staff. His escort by Doe CERT officers was not recorded by video, though regulations required it. Plaintiff also needed treatment for a scalp wound that would not

> stop bleeding. Defendant Weiland informed Plaintiff that he would be charged with a disciplinary violation, assault on staff. Further, Weiland told Plaintiff that he had "really fucked up" for "touching his officers."
>
> The blood from Plaintiff's head wound matted Plaintiff's long hair and caused it to droop into his eyes and mouth. Plaintiff was in hand and leg restraints. Plaintiff was not combative during the escort. Because he could not use his hands to move the hair away from his face, he attempted to push it away with his tongue and by blowing on it. Weiland noticed the attempts by Plaintiff to move his hair and stopped the escort. He asked Plaintiff "what the hell [he] was doing."
>
> When he failed to understand Plaintiff's explanation, Weiland became irritated. Defendants Weiland and the Doe CERT officers took Plaintiff past the medical department and towards the property department. When they reached a camera "blind spot," Plaintiff was slammed to the ground. Weiland and the CERT officers pinned Plaintiff down and began to punch and kick him. With his face towards the concrete floor, an officer stomped on the back of his head. Plaintiff blacked out and could not maintain consciousness. He was taken to the local emergency room where medical staff documented that Plaintiff's head was swollen and he had compound fractures in his face and near his eye. Plaintiff also suffered from a broken hand in addition to bruising, lacerations, and abrasions across his entire body.
>
> In December 2022, Plaintiff received a disciplinary hearing for the assault on staff charge. The hearing was led by Defendant Lieutenant Rigney. . . . Plaintiff also informed Rigney at the hearing that he wasn't receiving treatment for his broken hand. Rigney found Plaintiff guilty of Battery on Staff for spitting on Weiland. . . .
>
> Plaintiff filed an appeal or administrative grievance regarding the disciplinary hearing, the excessive force, and the lack of treatment for his hand. Plaintiff alleges Warden Gittere and Doe Deputy Director have authority and responsibility to investigate and assist in the scheduling of medical access in response to grievances. Defendants Gittere and Doe Deputy Director responded to the appeal/grievance by dismissing the appeal of the disciplinary hearing and ignoring Plaintiff's allegations that his broken hand was not being medically treated.

*Id*. at 3:21-5:5 (citations omitted). Notably, Montelongo does not include any allegations regarding the preceding "assault on staff" that allegedly resulted in his "scalp wound." *See Id*.

Montelongo was permitted to proceed on two claims different Eighth Amendment claims: (1) an excessive force claim against Defendant Weiland and Doe CERT officers, *Id*. at 5:26-6:11; and (2) an a "deliberate indifference to medical needs" claim against

Defendants Lt. Rigney, Gittere, and a Doe Deputy Director, *Id.* at 9:8-15. Following discovery, Montelongo identified Defendants Coulston and Elmore as the Doe CERT Officers. ECF No. 41.

## II. STATEMENT OF UNDISPUTED FACTS

Defendants incorporate the "Statement of Undisputed Facts" section from their Motion for Summary Judgment (ECF No. 61) as if fully stated herein. ECF No. 61 at 3:24-10:13.

## III. STANDARD FOR SUMMARY JUDGMENT

Defendants incorporate the "Standard for Summary Judgment" section from their Motion for Summary Judgment (ECF No. 61) as if fully stated herein. ECF No. 61 at 10:14-12:3.

"When the moving party has carried its burden under Rule 56(c)," the burden shifts to the non-moving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A properly supported motion for summary judgment will defeat contradictory, but unsubstantiated allegations in a complaint:

> It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial…What Rule 56(e) does make clear is that a party cannot rest on the allegations…contained in his pleadings.

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

In addressing the U.S. Supreme Court's tripartite ruling[1] setting the controlling procedures for summary judgment practice, the Ninth Circuit succinctly summarized the non-moving party's burden to survive summary judgment:

> First, the Court has made clear that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. Second, to withstand a motion for summary judgment, the non-moving party must show that there are genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*. Finally, if the factual context makes the non-moving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment.

*Cal. Architectural Bldg. Prods. Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis in original) (internal quotation marks and citations omitted).

The facts are only "viewed in the light most favorable to the nonmoving party if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.,* (quoting *Matsushita*, 475 U.S. at 586–87). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

---

[1] The U.S. Supreme Court's tripartite ruling for summary judgment practice consists of *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## IV. LEGAL ARGUMENT

Defendants incorporate the "Legal Argument" section from their Motion for Summary Judgment (ECF No. 61) as if fully stated herein. ECF No. 61 at 12:4-22:18.

### A. Defendants are Entitled to Qualified Immunity

#### *1. Montelongo's new allegations regarding IR-2022-ESP-002217*

a. Montelongo cannot rely on these new allegations

Montelongo's opposition seemingly enlarges the scope of his claim to include the incident in IR-2022-ESP-002217. *See* ECF No. 70 at 8:4-19, 10:15-23, 13:1-12. But Montelongo's complaint does not contain allegations regarding this incident, *See* ECF No. 1-1, and the court did not screen any such allegations, ECF No. 6 at 3:21-5:5. Fed. R. Civ. P. 8(a)(2) requires that Montelongo's complaint "give the defendant fair notice of what [his] claim is and the grounds upon which it rests." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)) (internal quotation omitted).

Montelongo "cannot assert unpled theories and claims for the first time in response to a motion for summary judgment." *Madrid v. Adkins*, No. C19-1710 JLR-TLF, 2020 WL 7029853, at *4 (W.D. Wash. Nov. 13, 2020), report and recommendation adopted, No. C19-1710 JLR-TLF, 2020 WL 7029342 (W.D. Wash. Nov. 30, 2020); *See Williams v. State*, No. 3:22-CV-00430-CLB, 2025 WL 3640975, at *6-7 (D. Nev. Dec. 15, 2025) (having ample opportunity yet failing to seek leave to amend, plaintiff cannot "slink in a new claim at summary judgment"). Montelongo may not rely on these unpled allegations to assert a separate Eighth Amendment claim against Coulston and Elmore. This Court should decline to consider Montelongo's arguments concerning the incident in IR-2022-ESP-002217.

b. Montelongo cannot establish liability re IR-2022-ESP-002217

Regardless, it is undisputed that Coulston and Elmore did not apply force for any malicious or sadistic purpose regarding the incident in IR-2022-ESP-002217. Surveillance video shows Montelongo drunkenly running off on his own during escort to the unit

showers, refusing to comply with escort, and then actively resisting Coulston's attempts to restrain him. ECF No. 66-1 at 07:52:00-07:58:00; ECF No. 70 at 57 (showing 178 mg/dl blood ethanol level consistent with alcohol intoxication). Montelongo's contrary assertions of malice elide his own obvious misbehavior, and are thus unavailing. *Scott*, 550 U.S. at 380. ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). Even if this court could reach this unpled excessive force claim, it should nonetheless grant summary judgment on this claim.

*2. Montelongo's excessive force claim regarding IR-2022-ESP-002218*

a. Montelongo fails to establish Coulston and Elmore's participation

Montelongo's opposition offers no evidence to establish that Defendants Coulston personally participated in the spontaneous use of force that occurred during escort from the ESP property room to visiting room. Record evidence establishes that officers Coulston and Elmore were not present for this escort; they were examined by nursing staff and promptly sent to the hospital. ECF No. 61-4 at ¶6; ECF No. 61-5 at ¶5; ECF No. 61-6 at ¶14; ECF No. 61-7 at ¶¶3-4, 7.

Since neither Coulston nor Elmore were present for the escort and resulting use of force, it is undisputed that neither officer personally participated in any use of force. Montelongo cannot establish that Coulston and Elmore violated the Eighth Amendment, and both officers are entitled to entitled summary judgment.

b. Montelongo fails to meaningfully dispute lack of attributable injury

Montelongo offers no evidence establishing that his documented injuries were sustained during this incident. *See* ECF No. 70. Montelongo cannot establish that documented left eye swelling and fractures were caused by the incident in IR-2022-ESP-002218, instead of the preceding incident in IR-2022-ESP-002217. Montelongo was examined by nursing staff prior to the incident in IR-2022-ESP-002218, and his left eye was already swollen consistent with these injuries. ECF No. 61-7 at ¶ 5; *See* ECF No. 66-

2; ECF No. 64-1 at NDOC000270. Montelongo cannot establish, as alleged, that these injuries somehow originated *after* this examination took place.

Nor can Montelongo establish that his hand injury originated with the use of force in IR-2022-ESP-002218. Surveillance footage from before the incident, and handheld footage from immediately after, shows Montelongo's hands were retrained behind his back in handcuffs. ECF No. 66-1 at 9:52; ECF No. 66-3 at 1:00-1:30. Consistent with their training, CERT Officers laid Montelongo prone (on his stomach) during the incident, and such could not have caused any injury to Montelongo's hands positioned behind his back. *Id.*; ECF No. 61-6 at ¶¶7-8. Notably, WBRH staff did not note, and Montelongo did not report any pain in or injury to Montelongo's hands. ECF No. 64-1 at NDOC000126-NDOC000129.

Montelongo cannot establish that laying him prone caused any of his documented injuries; nor is the act of laying an inmate prone to apply a spit mask "conscience shocking." Given the *de minimis* nature of the force at issue, Montelongo cannot prevail on his excessive force claim against Sgt. Weiland or any unnamed CERT Officer.

c. Montelongo fails to prove force was used maliciously or sadistically

Montelongo offers no evidence that any unnamed CERT Officers "slam[ed him] on his face, kick[ed] and punch[ed]" his head, and "brok[e his] hand" during this escort, or that Sgt. Weiland witnessed the same and did nothing. ECF No. 70 at 4. Spitting or otherwise propelling body fluids is a recognized threat to officer safety. ECF No. 61-6 at ¶7. Officers are trained to respond by restraining the spitting inmate in the prone position until a spit mask can be applied. *Id*. at ¶7. Given Montelongo's inebriation and repeated attempts to spit on officers, CERT Officers reasonably perceived a need to place Montelongo prone to restrain him until a spit mask could be applied. CERT Officers applied force commensurate with this need.

CERT Officers made repeated efforts to attenuate the force necessary to correct Montelongo's behavior. That is, CERT Officers gave Montelongo orders to face forward and away from escorting officers. *See* ECF No. 61-9; ECF No. 61-6 at ¶4. When these commands

failed, CERT Officers changed escort position. *Id.* at ¶5. Only when this change of escort position failed to prevent Montelongo from spitting on Sgt. Weiland did CERT Officers decide to place Montelongo prone to put a spit mask over his head. *Id.* at ¶¶6-8. It is thus undisputed that CERT Officers only resorted to laying Montelongo prone when verbal orders and a modified restraint position proved ineffective to obtain his compliance.

Again, there is no evidence Montelongo's injuries were caused by any force applied to lay Montelongo prone or restrain him in that position. Taken together, these factors cannot establish that CERT Officers intended to harm Montelongo rather than to coerce his compliance with lawful orders to comply with escort. These factors weigh against any purpose to harm, and thus Montelongo cannot establish that Sgt. Weiland or any unnamed CERT Officers violated the Eighth Amendment.

*3. Montelongo's deliberate indifference claim regarding his injuries*

a. <u>Montelongo cannot establish Gittere and Rigney's participation</u>

Montelongo offers no evidence establishing that Gittere and Lt. Rigney—neither of whom are medical professionals—personally participated in any alleged delay in care regarding Montelongo's injuries. There is no evidence Lt. Rigney was ever placed on notice of alleged delays during disciplinary hearings in OIC No's. 513820 & 513822. ECF No. 61-3 at ¶4; *See* ECF No's. 66-4 & 66-5. Absent constructive notice of any delays, Montelongo cannot establish that Lt. Rigney knowingly acquiesced in any delay—let alone that Lt. Rigney was somehow deliberately indifferent to Montelongo's care.

But even then, both Gittere and Lt. Rigney lacked authority or the ability to terminate the alleged delay in care. *See Williams*, 2025 WL 3640975, at *7, *9 n. 4. Defendants did not supervise institutional medical and nursing staff in their scheduling or provision of care. ECF No. 61-2 at ¶¶5-7; ECF No. 61-3 at ¶¶5-6. Supervision of institutional medical care was the responsibility of the NDOC Medical Director; supervision of nursing care and the scheduling of medical care were the responsibility of the supervising institutional Directors of Nursing Services and the Chief of Nursing Services. *Id.* Defendants could only advise Montelongo to

submit an appropriate request to the medical department, which is exactly what Gittere did in this case. ECF No. 61-2 at ¶7; ECF No. 61-12 at NDOC000042.

As neither Gittere nor Lt. Rigney had authority to remedy any delay in or denial of care, it is undisputed that neither knowingly acquiesced in the same. Montelongo cannot establish that Defendants Gittere and Lt. Rigney violated the Eighth Amendment, and both Defendants are entitled to entitled summary judgment.

b. Montelongo received medically acceptable care for his left eye

Montelongo failed to dispute evidence that institutional medical staff did not violate the Eighth Amendment with respect to the care provided for Montelongo's injuries. It is undisputed that Montelongo received adequate diagnostic and palliative care to treat the swelling and fractures surrounding his left eye. Dr. Vu at WBRH recommended palliative care to the extent these injuries would heal on their own, ECF No. 64-1 at NDOC000127-NDOC000130, NDOC000144, and there is ample evidence ESP medical providers complied with this plan of care, *Id*. at NDOC000248-NDOC000249. Staff additionally recommended a referral to outside optometry, which Montelongo himself refused. *Id*. Montelongo lacks evidence to establish this care was medically unacceptable under the circumstances or otherwise deliberately indifferent to any of his serious medical needs, and thus his claim fails as to these injuries.

c. Any delay re metacarpal fracture did not lead to additional harm

Montelongo failed to offer evidence establishing that delay in diagnosing Montelongo's metacarpal fracture resulted in any additional harm. Evidence establishes an apparent delay in care regarding the injury to Montelongo's hand, which was attributable to a lengthy waitlist for the internal radiologist to perform an X-Ray. *Id*. at NDOC000188. Once this X-Ray diagnosed a metacarpal fracture, staff promptly requested and scheduled a consultation with an outside orthopedic specialist. *Id*. at NDOC000225, NDOC000246. On the day Montelongo was scheduled to attend the clinic appointment at WBRH, Montelongo refused the appointment. *Id*. at NDOC000083-NDOC000084, NDOC000209.

Based upon his refusal of care following diagnosis of the metacarpal fracture, Montelongo cannot establish that any delay in diagnosis and scheduling this appointment led

to any additional harm. Gittere and Lt. Rigney are thus entitled to summary judgment on the merits of Montelongo's claim and as more fully addressed below, on the first prong of the qualified immunity analysis.

*4. Any Constitutional Violation Was Not Clearly Established*

Montelongo has the "burden of proving that the right allegedly violated was clearly established at the time of the violation." *Simmons v. G. Arnett*, 47 F.4th 927, 934–35 (9th Cir. 2022). To prove a violation of clearly established law, to defeat qualified immunity, there must be controlling legal precedent "from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a consensus of courts outside the relevant jurisdiction." *Russell v. Lumitap*, 31 F.4th 729, 737 (9th Cir. 2022); *but see Kisela v. Hughes*, 584 U.S. 100, 106 (2018) (questioning, but not deciding, whether "controlling circuit precedent could constitute clearly established law").

Stated differently, Montelongo must identify the right at issue "with a high degree of specificity." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12-13 (2015) (per curiam)). That is, whether law clearly establishes a given right must be assessed "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Only in a "rare obvious case" will general legal propositions suffice. *Id*. at 199.

Montelongo has made no coherent attempt to carry his burden of proof; Montelongo cites several Supreme Court cases for the elements and general principles of excessive force, he does not examine these in the context of this case. *See* ECF No. 70. Montelongo cites no controlling authority whatsoever regarding his deliberate indifference to medical needs claim. *See Id*. Because Montelongo has failed to meet his burden, Defendants are entitled to qualified immunity. *See, e.g., Greene v. Dzurenda*, No. 2:23-CV-01946-APG-NJK, 2025 WL 901807, at *2 (D. Nev. Mar. 24, 2025); *White v. Oliver*, No. 2:23-CV-01121-APG-DJA, 2025 WL 928935, at *3 (D. Nev. Mar. 27, 2025).

Regardless, there is no such law clearly establishing that Defendants violated any of Montelongo's constitutional rights. There is no clearly established law that an officer

violates the Eighth Amendment by laying an inmate prone to place a spit mask over his head. There is no evidence Defendants are deliberately indifferent to plaintiff's medical needs for failing to provide care that the plaintiff has refused. There is no clearly established law that Defendants are liable for acquiescing in acts or omissions constituting a constitutional violation where they have no notice of the violation and no authority to terminate the alleged violation. Montelongo, therefore, cannot meet his burden of proof to show a violation of clearly established law.

Defendants are entitled to qualified immunity because they acted reasonably and were not plainly incompetent. This Court should grant Defendants' Motion for Summary Judgment.

**B. Montelongo is Not Entitled to Compensatory or Punitive Damages**

*1. Compensatory Damages*

Montelongo offered evidence from which a reasonable juror might determine that he is entitled to compensatory damages. *See* ECF No. 70. As argued, Montelongo cannot prove that these injuries were attributable to the particular use of force that is the subject of this lawsuit. Furthermore, as argued, Montelongo cannot establish that he suffered any further compensable pain or injury attributable to any delay of denial of care for these injuries.

Montelongo cannot prove by preponderance of the evidence that he suffered any compensable pain or injury. Thus, Defendants are entitled to summary judgment on the issue of compensatory damages.

*2. Punitive Damages*

Montelongo has failed to present any evidence—let alone evidence that a reasonable jury could find clear and convincing—of malice, express of implied, sufficient to support an award of punitive damages. *See* ECF No. 70. Here, even if summary judgment is denied as to the Eighth Amendment claim, Montelongo lacks clear and convincing evidence of malice, express or implied, upon which a reasonable juror could award punitive damages. Evidence establishes that Defendants did not intend to harm Montelongo, but rather to prevent him from spitting on officers during escort. Likewise, there is no evidence Defendants

consciously disregarded any need for care of Montelongo's documented injuries. There is simply no evidence, let alone clear and convincing evidence, that Defendants intentionally and maliciously harm Montelongo.

The undisputed facts fail to establish the requisite conscious disregard, and certainly fail to show malice or despicable conduct. Accordingly, Defendants are entitled to summary judgement on the issue of punitive damages.

## V. CONCLUSION

This Court should grant Defendants' Motion for Summary Judgment. Montelongo cannot establish that Defendants Elmore and Coulston personally participated in the alleged use of force, let alone that such force was more than *de minimis* or that it was intended to harm. Montelongo cannot establish that Defendants Gittere and Rigney knowingly acquiesced toward any delay in providing medical care for Montelongo's injuries. Care for Montelongo's eye injuries was medically acceptable under the circumstances, and delay in diagnosing Montelongo's metacarpal fracture did not result in any further harm. Montelongo cannot establish by preponderance of the evidence that he suffered any compensable pain or injury, and there is no clear and convincing evidence that he is entitled to punitive damages. Defendants are entitled to protection for Montelongo's claims under the doctrine of qualified immunity.

DATED this 26th day of February, 2026.

AARON D. FORD
Attorney General

By: /s/ Samuel L. Pezone Jr.
SAMUEL L. PEZONE JR. (Bar No. 15978)
Deputy Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on February 26, 2026, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** via this Court's electronic filing system. Parties who are registered with this Court's electronic filing system will be served electronically.

/s/ Kimalee Goldstein
KIMALEE GOLDSTEIN, an employee of the
Office of the Nevada Attorney General