UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

VICTOR MONTELONGO,

    Plaintiff

v.

JAMES WEILAND, et al.,

    Defendants

Case No.: 3:23-cv-00624-CSD

**Order**

Re: ECF No. 61

Before the court is Defendants' motion for summary judgment. (ECF Nos. 61, 61-1 to 61-14, 64-1, 66 (notice of manual filing), and 67-1 to 67-3.) Plaintiff filed a response. (ECF No. 69.)[1] Defendants filed a reply. (ECF No. 71.)

For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP).

The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment excessive force claim against defendants James Weiland and Doe CERT[2] officers, who were subsequently identified and substituted in by Plaintiff as Christopher Coulston and Edward Elmore. Plaintiff was also permitted to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Curtis Rigney, William Gittere, and the Doe

---

[1] It appears the response was filed twice at ECF Nos. 69 and 70.

[2] CERT is an acronym for NDOC's Correctional Emergency Response Team. (*See* ECF No. 61-9 at 2.)

Deputy Director. (ECF No. 6.) Plaintiff never sought to amend or substitute an individual defendant for the Doe Deputy Director. Therefore, the Doe Deputy Director will be dismissed without prejudice.

Plaintiff's excessive force claim is based on allegations that Sergeant Weiland and approximately four other CERT officers escorted Plaintiff out of a unit due to an alleged assault on staff incident and for treatment of a superficial scalp wound that would not stop bleeding. Plaintiff was escorted in full restraints to ESP Medical. Plaintiff claims that instead of taking him to medical, he was being escorted to the property department. During the escort, Plaintiff claims that he was slammed to the ground and severely beaten by the CERT officers, and this occurred in a place that did not have surveillance camera coverage.

Specifically, Plaintiff claims that his scalp was bleeding, which matted his long hair into his eyes and mouth. Plaintiff was in hand and leg restraints and could not get the hair out of his mouth, so he tried to push it out with his tongue and by blowing it. He asserts that Weiland stopped the escort and asked Plaintiff what he was doing. Plaintiff tried to tell him, but Weiland did not understand him and became very irritated. The escort resumed, and Plaintiff contends that he was yanked to a stop and slammed to the ground. He alleges that the CERT officers and Weiland pinned Plaintiff down, punched and kicked him, and someone stomped on the back of his head. Plaintiff blacked out and went in and out of consciousness.

Plaintiff alleges he was subsequently taken to the hospital and found to have numerous injuries, including a compound fracture in his face and a broken hand as well as bruising and lacerations. Plaintiff was later charged by Weiland with battery, asserting that Plaintiff spat at him and the spit landed on his glasses.

Plaintiff's Eighth Amendment medical care claim is based on allegations that he reported to Rigney and Gittere that he needed appropriate treatment for his broken hand, to no avail.

Defendants move for summary judgment, arguing: (1) Plaintiff cannot establish Weiland failed to intervene in any alleged use of excessive force or the elements of an excessive force claim against Weiland; (2) Elmore and Coulston were not present for and did not personally participate in the alleged use of excessive force; (3) Plaintiff cannot establish that Gittere and Rigney personally participated in any failure to treat Plaintiff's injuries; (4) Defendants are entitled to qualified immunity; and (5) Plaintiff is not entitled to compensatory or punitive damages.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

3

of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted).

The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts and Parameters of Plaintiff's Claims**

Plaintiff was allowed to proceed with an excessive force claim on screening based on the allegations that Weiland and the accompanying CERT officers used excessive force against Plaintiff after Weiland claimed that Plaintiff spat on him during his escort to the property room. Plaintiff substituted Coulston and Elmore in place of the Doe CERT officers. Plaintiff was also allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Rigney and Gittere, based on allegations they ignored his complaints he had not received adequate medical care for his hand.

Plaintiff was not permitted to proceed with any procedural due process claim related to his disciplinary hearing related to the incidents of October 28, 2022 (*see* ECF No. 6). Therefore,

the court will not address arguments on those issues raised in Plaintiff's response to Defendants' motion.

Video surveillance and incident reports—which Plaintiff does not generally dispute insofar as these facts are concerned—demonstrate that on October 28, 2022, Officers Coulston and Elmore (who were not working as CERT officers) went to Plaintiff's cell to escort Plaintiff and his cellmate to the showers. Plaintiff and his cellmate engaged in a struggle with Coulston and Elmore (Plaintiff with Elmore and his cellmate with Coulston), which resulted in other officers arriving and both inmates being taken to the ground and then taken out of the cell block in restraint chairs. Both officers were sent to the hospital to be assessed for injuries. Plaintiff was taken to a holding cell to be examined by Nurses Wilson and Gingoyon, who noted Plaintiff had a left eye cut that was actively bleeding, his left eye was swollen and blue to purple in color, and his left nostril was bleeding. One of the nurses contacted the on-call provider, APRN Villegas, who directed that Plaintiff be sent to the emergency room for further assessment.

That is the first incident on October 28, 2022. That incident—involving the attempted escort of Plaintiff and his cellmate to the showers by Coulston and Elmore and ensuing struggle—is not the subject of Plaintiff's complaint. Incidentally, this incident was captured by several surveillance cameras in the cell block, and Plaintiff's medical evaluation by ESP nursing staff was recorded with a handheld camera.

Nor is it disputed that later that evening, CERT officers, supervised by Weiland, began the escort of Plaintiff from the holding cell to the property room so Plaintiff could be transported to the hospital. That is how the second incident of October 28, 2022, began; however, the parties dispute what happened at that juncture.

Weiland contends that Plaintiff became agitated and noncompliant during the escort and even attempted to stop the escort. As a result, Plaintiff was placed in a modified wrist lock and was escorted walking backward, facing Weiland. Weiland claims Plaintiff continued to turn toward the officers and pull away, and then spat at Weiland, hitting Weiland's glasses. According to Weiland, the CERT officers then placed Plaintiff prone on the ground and put a spit mask over his head to prevent him from spitting on officers again. Weiland maintains he did not punch, kick or stomp on Plaintiff, and did not witness any other officer do so. Plaintiff was taken to the property room and subsequently transported to the hospital.

Plaintiff, on the other hand, claims he was in full restraints and was fully compliant with the escort, but his hair was in his face and mouth and he was trying to get the hair out when Weiland thought Plaintiff was spitting at him. He contends that Weiland stopped and asked what he was doing, but did not understand Plaintiff's explanation, and became irritated. At that point, the officers stopped the escort, and Plaintiff was thrown to the ground, punched, kicked and stomped in the head, causing him to black out and lose consciousness.

Unlike the first incident, there is no video footage that captures the second incident.[3]

Plaintiff's complaint does not include allegations of excessive force by Coulston and Elmore in connection with the escort to the showers, which preceded the second incident involving Weiland. It is the second incident on October 28, 2022, that is the subject of Plaintiff's excessive force claim in this action.

Plaintiff was eventually taken to William B. Ririe Hospital. The emergency room doctor's report states that Plaintiff suffered a head injury and brief loss of consciousness, and arrived complaining of pain in his wrist and ankles. He had a hematoma to the left orbital

---

[3] There is video from a handheld camera *after* the incident.

measuring .79 inches, as well as superficial bruising. A head CT revealed a left inferior orbital fracture and left maxillary sinus wall fracture. (ECF No. 64-1 at 6, 45-47, 61.) Plaintiff was discharged back to the prison and admitted to the infirmary for observation, and prescribed various medications for pain and swelling. (*Id*. at 168.)

There is no specific mention of Plaintiff's right hand in Plaintiff's medical records until approximately two weeks later, on November 14, 2022, when he saw a medical provider identified by Defendants as Dr. Bryan. (*Id*. at 184.) Dr. Bryan ordered an x-ray of the right hand and Plaintiff was to be seen for a follow-up to review the results. (*Id.* at 167.)

On December 27, 2022, Plaintiff sent a request form to medical (known as "kite") asking if he was still on the list to get an x-ray of his right hand. He was told he was still on the list. (*Id.* at 107.) He had an x-ray of the right hand on January 24, 2023, which revealed a fracture of the distal aspect of the fifth metacarpal with minimal displacement. (*Id*. at 64-1 at 5.) Three days later, Dr. Benson (who is not a defendant) requested a referral to an orthopedist for evaluation of the fracture. It was authorized by the Utilization Review Committee (URC). (*Id*. at 2, 166.) Shortly thereafter, Dr. Benson also ordered a right-hand splint for Plaintiff for 14 days as well as pain medication. (*Id*. at 144, 165-66.)

On February 2, 2023, Plaintiff sent a kite to medical asking about the results from his hand x-ray. He was told he was scheduled with the provider to review the results. (*Id.* at 104.) In early February of 2023, Dr. Barrett (also not a defendant) requested a referral to an orthopedist regarding the fracture of the metacarpal, which was authorized by the URC. (*Id.* at 3.) Plaintiff apparently refused the appointment on March 13, 2023. (*Id*. at 2, 3, 102, 128.)[4]

---

[4] Plaintiff sent a kite that day stating he said he did not want to see the doctor because he did not know he had any scheduled appointment, but if it was for his fractures to his face or hand he

Plaintiff was served with disciplinary charges for battery the two incidents on October 28, 2022. (ECF No. 61-10 at 6 (incident with Elmore and Coulston); ECF No. 61-11 at 2 (incident with Weiland).) Rigney was the disciplinary hearing officer for the hearings on December 22, 2022, and January 5, 2023. (ECF Nos. 61-10, 61-11.) Both hearings were recorded. (Defs' Exhibits Q and R, audio recordings of disciplinary hearings, manually filed with the court.) Neither of the audio recordings of the hearings reflects that Plaintiff mentioned to Rigney he was not receiving adequate care for his injuries.

Plaintiff appealed both disciplinary findings. (ECF No. 61-12 (disciplinary appeal for the incident involving Weiland); ECF No. 61-13 (disciplinary appeal for the incident involving Elmore and Coulston).) Defendant Gittere was the warden at ESP and responded to Plaintiff's first level disciplinary appeals. (Gittere Decl., ECF No. 61-2; ECF No. 61-12 at 5; ECF No. 61-13 at 3.)

Neither Gittere nor Rigney are part of NDOC's medical staff and do not supervise, direct or have the ability to authorize the provision of medical care within NDOC. (Gittere Decl., ECF No. 61-2; Rigney Decl., ECF No. 61-3.)

**A. Eighth Amendment Excessive Force Claim vs Coulston, Elmore and Weiland**

**1. Coulston and Elmore**

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights

---

wanted to see the doctor. The response to the kite says that Plaintiff had an appointment to see "ortho," but Plaintiff refused. (ECF No. 64-1 at 102.)

deprivation[.]" *Id*. (citations omitted). In other words, the plaintiff "must show that each defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 140 S.Ct. 159 (2019) ("inmates must show that each defendant personally played a role in violating the constitution.").

There is no evidence that Coulston and Elmore had any involvement or personally participated in the alleged use of excessive force during the second incident of October 28, 2022, that is the subject of this complaint. Therefore, summary judgment will be granted in their favor.

**2. Weiland**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S. Const.  amend.  VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v.  Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v.  Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir.  2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir.  2003). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327).

10

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

As noted above, Weiland and Plaintiff have wildly different accounts of what occurred with respect to the second incident on October 28, 2022. Weiland contends Plaintiff was not being cooperative in his escort as he was turning toward and trying to pull away from officers and eventually spat at Weiland. In response, Weiland claims the CERT officers merely placed Plaintiff prone on the ground and put a spit mask over his head.

Weiland's version of events is corroborated by the reports of Jeffrey Brandon, Chet Rigney (not defendant Curtis Rigney), Danial Jacobs, Shane Brown, Jose Guzman, and Kirkland, who apparently were the CERT officers escorting Plaintiff under Weiland's supervision. (ECF No. 61-9.)

In both his response to Defendants' motion and his verified complaint, Plaintiff asserts he was never combative during the escort, and he did not spit at Weiland, but instead, he was trying to get his long hair out of his mouth. He maintains that before the use of force, Weiland told him he had "fucked up for touching his officers," presumably referencing the first incident that night. Plaintiff asserts that when he tried to explain how he was trying to get his hair out of his mouth, Weiland became extremely irritated and Plaintiff was yanked to a stop, and in full restraints, was slammed to the ground. He maintains that Weiland, along with the CERT officers, pinned him down, punched and kicked him, and stomped on the back of his head, causing him to lose consciousness.

Plaintiff's version of events are reiterated in his disciplinary appeal grievance (ECF No. 61-12) and in his disciplinary hearing.

There are genuinely disputed facts that preclude granting summary judgment in Weiland's favor.

First, there is a dispute regarding the force used during this incident. Weiland contends that only *de minimis* force was utilized to place Plaintiff prone on the ground after he spat at Weiland, and to put a spit mask on his head. Plaintiff's claim is exactly the opposite—that extreme force was applied to yank him to a stop, slam him to the ground, punch and kick him and stomp the back of his head.

There is also a dispute about the need for the use of force. Weiland's position is that Plaintiff was non-compliant with his escort, turning and pushing away from the officers, and eventually spat at Weiland. Plaintiff, on the other hand, asserts that he was compliant at all times, he was walking in full restraints during the escort, and that he did not spit at Weiland.

With this in mind, there is an obvious dispute concerning the relationship between the need and amount of force used and any "threat" perceived by the officers.

Finally, the parties dispute the extent of Plaintiff's injuries and whether they are attributable to this incident.

Weiland does not dispute that Plaintiff had documented injuries when he was seen in the emergency room following both incidents of October 28, 2022, including abrasions, swelling and fractures to the left side of his face. Weiland argues, however, that Plaintiff cannot establish that his documented injuries were caused by the second incident, as opposed to the preceding incident. By that same token, there is nothing in the medical records at all that discusses whether

the injuries were caused by the first incident or the second. Nor do Defendants offer an expert opinion in that regard.

If Plaintiff's version of events is believed, he was punched and kicked and his back and head stomped, causing him to lose consciousness. The emergency room doctor's report seems to endorse that Plaintiff did lose consciousness. There is no indication this occurred with respect to the first incident, but was in connection with the second incident. A fact finder could reasonably conclude that Plaintiff's injuries were attributed to the first incident, the second incident, or both.

Nor does Weiland dispute that Plaintiff was assessed with a swollen right hand two weeks after the incident, and an x-ray was ordered which ultimately revealed a fracture to the fifth metacarpal. Weiland argues there is no evidence that the hand injury was a result of the second incident. Weiland points out that Plaintiff's hands were restrained behind his back, and so the officers could not have caused any injury to his hands while placing Plaintiff prone on the ground. This ignores Plaintiff's version of events that he was slammed to the ground, kicked, and punched.

Weiland is correct there is no reference to hand pain in the hospital records from that evening, but the record does reflect Plaintiff complained of pain in his wrist. It is possible the source of that pain was from an injury lower down in the hand. In any event, it is the province of the fact finder to evaluate the records and testimony and determine whose version of events to believe, and ultimately, whether the hand injury resulted from the incident that is the subject of this action.

Given these genuine factual disputes, Weiland is not entitled to qualified immunity. "In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged

misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

There are genuinely disputed facts concerning whether Weiland violated Plaintiff's rights under the Eighth Amendment. Moreover, taking the facts in the light most favorable to Plaintiff, it was clearly established that an officer who employs force maliciously or sadistically to cause harm, and not in a good faith effort to maintain discipline violates the Eighth Amendment. *Hudson*, 503 U.S. at 6-7.

In conclusion, Defendants' motion for summary judgment is denied as to the Eighth Amendment excessive force claim against Weiland.

**B. Deliberate Indifference to Serious Medical Needs vs Rigney and Gittere**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even

gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Plaintiff alleges that he advised Rigney of his lack of treatment for his hand injury during his disciplinary hearings, and that he advised Gittere of this issue in his disciplinary appeal grievance.

Plaintiff's disciplinary hearings were conducted by Rigney on December 22, 2022, and January 5, 2023. (ECF Nos. 61-10, 61-11.) The recordings of Plaintiff's disciplinary hearings make no mention of Plaintiff's medical needs.

On December 25, 2022, Plaintiff submitted a first level disciplinary appeal grievance for the second incident involving Weiland. It contained Plaintiff's version of events concerning the alleged use of excessive force by Weiland and the CERT officers, and also included a statement that Plaintiff had yet to receive adequate treatment for his broken hand. (ECF No. 61-12 at 4-8.) Gittere responded to the first level of the disciplinary appeal, finding there was sufficient evidence to support the disciplinary findings. He also specifically advised Plaintiff that he could file a kite for medical treatment at any time. (*Id*. at 5.)

As pointed out above, there is no mention of any injury to Plaintiff's right hand in his medical records until some two weeks after the incident, on November 14, 2022, when he was seen by Dr. Bryan, who ordered an x-ray of the hand. (ECF No. 64-1 at 184.) On December 27, 2022, Plaintiff sent a kite asking if he was still on the list for an x-ray of his hand and he was informed he was still on the list. (ECF No. 64-1 at 107.) He had the x-ray on January 24, 2023, which showed the fracture of the fifth metacarpal. Plaintiff's medical providers referred him for an evaluation by an orthopedist, which he refused, and he was given a splint to wear for fourteen days. (*Id*. at 2, 102, 144,165, 166, 183.)

While Plaintiff generally contends that he told Rigney about his injuries and lack of treatment, this is not reflected in the audio recording of the hearing, and Plaintiff provides no factual detail about what he told Rigney. Even if Plaintiff had mentioned his hand injuries at the disciplinary hearing on December 22, 2025, Plaintiff was being treated for this condition by ESP's medical department at this time. He sent a kite to the medical department within a week after the disciplinary hearing, and he was told he was still on the list. He had the x-ray several weeks later, and he was referred to a specialist and given a splint.

In addition, Gittere did not disregard Plaintiff's complaint about his hand, but instead, specifically instructed Plaintiff to send a request to the medical department, which Plaintiff had done.

In sum, there is no evidence that Rigney—who served as the disciplinary hearing officer for the disciplinary charges associated with the events of October 28, 2022—or Gittere—who responded to Plaintiff's first level disciplinary appeal grievance—personally participated in any alleged delay in Plaintiff receiving medical care for his hand.

As such, summary judgment will be granted in favor of Rigney and Gittere for Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim.

**C. Damages**

Defendants argue Plaintiff is not entitled to compensatory or punitive damages.

### 1. Compensatory Damages

Defendants argue Plaintiff is not entitled to compensatory damages because he cannot prove these injuries are attributable to the second incident.

Depending on whose version of events is believed, a fact finder could conclude that the injuries Plaintiff suffered as a result of the incident are attributable to the second incident. Therefore, Defendants are not entitled to summary judgment on the issue of compensatory damages.

### 2. Punitive Damages

Defendants also argue Plaintiff lacks clear and convincing evidence of malice upon which a jury could award punitive damages.

"Punitive damages are awarded in the jury's discretion 'to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" *Smith v. Wade*, 461 U.S. 30, 54 (1983) (quoting Restatement (Second) of Torts § 908(1) (1977)).

To be awarded punitive damages, the plaintiff must demonstrate the defendant's conduct was "motivated by evil motive or intent, or … involves reckless or callous indifference to the federally protected rights of others." *Id*. at 56; *see also Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citation omitted, "malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages"); Ninth Circuit Model Civil Jury Instruction 5.5.

17

Whether punitive damages should be awarded is ordinarily decided by the trier of fact at trial, and not by a judge on a motion for summary judgment, because whether to award punitive damages requires a factual inquiry into the defendant's motives. *See Harris v. Ely State Prison Staff,* No. 3:21-cv-00380-CLB, 2025 WL 2806549, at *18 (D. Nev. Oct. 2, 2025); *Spears v. Balaam,* No. 3:21-cv-00373-MMD-CSD, 2022 WL 2162799, at *6-7 (D. Nev. Apr. 12, 2022); *Pullano v. No. 8170, CCDC Guard*, No. 2:10-cv-00335-MMD, 2013 WL 1758999, at * 2 (D. Nev. Apr. 24, 2013).

Here, there a genuinely disputed facts concerning Weiland's motives and whether excessive force was used. Therefore, it is not appropriate for the court to decide whether punitive damages should be awarded at the summary judgment stage. Defendants' motion is denied in this regard.

### IV. CONCLUSION

The Doe Deputy Director is **DISMISSED WITHOUT PREJUDICE**.

Defendants' motion for summary judgment (ECF No. 61) is **GRANTED IN PART AND DENIED IN PART** as follows: (1) the motion is **GRANTED** as to the Eighth Amendment excessive force claim against defendants Coulston and Elmore, and as to the Eighth Amendment deliberate indifference to serious medical needs claim against Rigney and Gittere; (2) the motion is **DENIED** as to the Eighth Amendment excessive force claim against Weiland; (3) the motion is **DENIED** insofar as Defendants argue they are entitled to qualified immunity and Plaintiff is not entitled to compensatory or punitive damages.

The Clerk shall kindly enter judgment in favor of defendants **Coulston, Elmore, Rigney, and Gittere**. This matter will proceed to trial on the Eighth Amendment excessive force claim against Weiland.

The Joint Pretrial Order of Plaintiff and Defendant Weiland must be filed within **30 days** of the date of this Order.

**IT IS SO ORDERED**.

Dated: May 22, 2026

_____
Craig S. Denney
United States Magistrate Judge